**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Brian T. Kelleher,

      Plaintiff,

   v.

Michael Regan in his official
capacity of EPA Administrator,        Civil Action No. 23-cv-01346-DLF

      Defendant

[RECEIVED Mail Room JUN 28 2024 Angela D. Caesar, Clerk of Court, U.S. District Court, District of Columbia]

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT**
**MICHAEL REGAN AS EPA ADMINISTRATOR**

      Pursuant to Rules 55(a) and 55(b) of the Federal Rules of Civil Procedure, pro se Plaintiff Brian T. Kelleher ("Plaintiff") respectfully moves for the entry of default judgment by the Court against Defendant Michael Regan in his official capacity of the Administrator of the Environmental Protection Agency (EPA) ("Defendant"). Plaintiff brought this action on Dec 27, 2023 in the form of a much abbreviated/condensed third-amended complaint. Service was affected by the clerk on Dec 29, 2023. See **ECF No. 24**. On Jan 1, 2024, Plaintiff filed a motion to amend both the pleadings and exhibits to correct typos and mistakes of omission, etc. Service was affected by the clerk on Jan 2, 2024. See **ECF No. 32**.

      In summarizing the extensive evidence presented to this court which explains Defendant's prudent decision not to answer, reference is made to Sections 1 through 6 of the Pleadings and Key Findings 1 through 20 set forth in Section 4 as well as the correlating 20 Exhibits A through T.

   **Part 1: Resolving the issues on jurisdiction and standing**

In sections 1-3 of the Pleadings (pages 1-13), Plaintiff made the case that even though this action is at its root a Clean Air Act citizen suit which state and federal courts aptly consider a nuisance, given all that is a stake to the USA in this Court's ruling on Plaintiff's key findings and pleadings, this suit is aptly considered highly atypical and among the most important and consequential civil action ever filed in the USA for the following reasons. **(1)** In applying his unique expertise in applying codified federal rules of evidence that apply in a court setting to the well-established/highly regulated professional-engineering disciplines of air and water quality engineering as well as related relevant state and federal laws that are protective of public welfare and commerce, Plaintiff has completely and utterly debunked the entire body of evidence that the EPA has relied on in justifying the regulation of greenhouse gases (GHGs) and ozone-depleting substances (ODS); **(2)** In the same manner, Plaintiff has introduced multiple lines of massive empirical evidence proving definitively and unequivocally that all global-warming trends since the early 1970s are associated with a natural solar cycle called a modern day Grand Solar Maximum (GS Max). The GS Max causes moderate to massive stratospheric ozone depletion and resulting proportionately linear increases in the amount of shortwave irradiance in the stratospheric ozone layer's Chappuis absorption band passing through the stratosphere and troposphere and reaching the Ocean/Land surface. **(3)** In the 2-page appendix to his Feb 23, 2024 opposition (see **EDF 34 and 34.1**) to Defendant's Feb 12, 2024, motion to dismiss the third amended complaint with prejudice (see **EDF 32**), Plaintiff further demonstrated that the current EPA Administrator damaged him by failing to act at any time or in any significant way to his formal petition to deregulate GHGs and ODS that he filed with the EPA initially on Jul 11, 2021 and in amended fashion on Dec 30, 2021. Plaintiff holds that this by itself is proof that Defendant specifically and intentionally financially damaged Plaintiff. **(4)** As set forth in **Section 2** pp 9-12 of the third-amended pleadings, Plaintiff holds he was damaged by **(4a)** Defendant's refusal to acknowledge the significance of the fatal SIST2 findings published during Defendant's tenure as EPA Administrator in May 2021 and May 2022 and in (4b) Defendant recklessly endorsing the White House USGCRP Nov 2023 Climate report by telling the public that the IPCC climate models had been validated in 2016 via IPCC CMIP6 and that the CMIP6 model output was highly accurate. **(5)** Plaintiff holds that his now confirmed prediction in **Section 2** p 10 of the amended pleadings that EPA would ultimately decide to immediately settle the action is

proof of standing. **(6)** Consistent with his claim on the monumental importance of this civil action, Plaintiff holds that there is also proof of standing taking into consideration (6a) the extent of alleged legal wrongdoing the Defendant is accused of, (6b) the nature and extent of what is at stake to public welfare and global political stability, and (6c) the importance to U.S. commerce in mitigating the threat of massive class action litigation against the U.S. Gov seeking multiple trillions in damages. **(7)** Plaintiff holds that this suit is utterly and completely atypical of a traditional CAA citizen suit wherein citizens and groups are attempting to get the EPA to take enforcement actions rather than seeking compensatory damages for legal wrongdoing under the constitution. **(8)** Plaintiff's position on the importance of alleged election interference via a Marxist insurrection is covered in **Part 5** of this document.

**Part 2: Proof that the current and prior EPA Administrators violated the Clean Air Act and four other federal laws by failing to correctly identify GS-Max conditions as the true source of recent global warming** See **Section 1** pp. 2 and 8, **Section 6** pp 20-23 and Section 7 pp 23-34 of the third-amended pleadings.

The five federal statutes/regulations allegedly violated include the following: **(1)** the Clean Air Act 42 U.S.C. (1a) § 7412 (b)(3)(B) (C) and (c)(9)(B)(ii); (1b) § 7521 (a)(1); and (1b) § 7604(a) which is the citizen suit provision. **(2)** the separation of power clauses of the U.S. Constitution 28 USC section 133, Articles 1-3; **(3)** the Administrative Procedure Act 5 U.S. Code § 702 titled "Right of Review" and § 706 titled "Scope of Review"; **(4)** The Global Climate Protection Act of 1987 codified as PL-100-204 title X1 Sections 1101 through 1106 (Dec 22, 1987). Given that §1103(b) puts the EPA Administrator in effective charge of "developing and presenting to congress a multi-agency coordinated national policy on global climate change," this provision is considered by Plaintiff to be linked to the relevant sections of the Clean Air Act cited above; and **(5)** The Hatch Act, 5 U.S.C. §§ 7321-7326 which greatly restricts Federal employees' involvement in partisan political activity.

**Part 3: Proof that the EPA Administrator violated two additional critically important federal and state laws protective of commerce by failing to correctly identify GS-Max conditions as the true source of recent global warming.** See **Section 4** key findings 1 through 3 p 14, and correlating Exhibits A through C as well as **Section 6** pp 21 and 23 of the third amended pleadings.

The key additional laws that are protective of commerce include statewide and District of Columbia Municipal Regulations Title 17, Chapter 17-15 § 17-1517. These state and DC laws are

individually and collectively referred to as the professional codes and set forth stringent licensing requirements for many types of skilled-professional trades that require formal training and certification thereof. At the apex of the professional codes are those that apply to civil engineers including certain categories of environmental engineers since environmental engineering that relates to fixed works pollution control systems is considered a branch of civil. All engineering drawings must reference relevant and applicable safety codes and standards and be signed and stamped by the lead civil engineer in responsible charge. Moreover, all conclusions and recommendations in engineering reports that potentially affect public welfare and commerce similarly must bear the signature and stamp of the lead engineer in responsible charge. Liability and errors and omissions insurance is generally considered mandatory for most contractual agreements. There are severe penalties for incompetence or unethical behavior. These laws strictly prohibit any and all scientists from practicing civil/environmental engineering and/or HVOC engineering.

      An additional extremely important applicable law protective of commerce is the National Technology and Transfer and Advancement Act of 1995 codified as public Law 104-113 with section 12(d) particularly relevant. This law codified OMB circular A-119 prudently adopted by the Reagan Administration in 1982. This law expressly prohibits federal agencies from developing their own government-unique standards when there is no compelling need to do so. Rather it compels executive branch federal agencies to incorporate the use of relevant and applicable voluntary consensus standards (VCS) whenever they exist. In this case the relevant VCS are those validated and approved by teams of private-sector engineers representing the solar energy industry including HVOC and solar engineers. Specifically, the relevant and applicable engineering VCS that needed to be applied in identifying the source of global warming trends that commenced or accelerated in the early 1970s are those developed in the 1980s and 1990s by the U.S. Department of Energy (DOE). Here the EPA and DOE leadership have colluded and conspired in setting a politically motivated reprehensible double standard. They apply/enforce proven accurate legally mandated VCS to assess the impacts of ozone depletion to encourage development of solar energy. They apply/enforce proven corrupt illegal government-unique standards to assess the impacts of ozone depletion to destroy the fossil-fuel industry.

**Part 4: Reproduction of Section 3 of the Pleadings pp 12-13 listing allegedly corrupt lines of evidence relied on by the EPA that fail to meet codified Federal Rules of evidence.** Quoting verbatim from **Section 3**, Plaintiff holds that any federal judge would have come to the same conclusions that Plaintiff reached in determining the lack of evidentiary value stemming from the SIST2 findings.

*"At the time the US Supreme Court decided the MA vs EPA Action in 2007 and the EPA issued its notice of endangerment in December 2009, the EPA and Scientific Community were relying entirely on **(1)** the close correlation between rising $CO_2$ and the temperature at the Earth's surface which is expected under Henry's Law and Fick's law as explained in **Key Finding 17**; **(2)** the questionable ability and legality of federal government employees to create government-unique general circulation climate models (GCMs) that were advertised to have confirmed the dubious assumption of a cause and effect based on the greenhouse gas theory (GHGT) as explained in **Key Finding 5**; and **(3)** the dubious assumption that the first law of thermodynamics requires there be an energy balance at the top of the atmosphere despite the opacity of the troposphere and stratosphere and the obvious storage of massive heat energy and potential energy in the Ocean as explained in **Key Finding 16**.*

*Because of these doubts, shortly after former president Obama signed the Paris Climate Accord in Dec 2015, Plaintiff, applying 30 years' private-sector experience as a court-appointed neutral fact finder (**see Exhibit A**), commenced a rigorous neutral fact-finding analysis of the source of ozone depletion and global warming trends. His findings ultimately resulted in this suit. The suit followed, however: **(1)** extensive direct communication with the Trump Administration EPA Administrator (**see Exhibit B**) and **(2)** a flurry of whistle-blowing complaints (WBCs) concerning violations of statutes and ethics with most directed at the climate-modeling centers.*

*In the USA there are six climate-modeling centers **(1)** DOE Lawrence Livermore National Lab (LLNL); **(2)** DOE Earth and Environmental Systems (EES) Program; **(3)** NASA's Goddard Space Flight Center (GSFC), **(4)** NASA's Goddard Institute for Space Studies (GISS) both within the NASA Earth Science Division (ESD); **(5)** NOAA Geophysical Fluid Dynamics Lab (GFDL); and **(6)** The National Science Foundation (NSF) National Center for Atmospheric Research (NCAR) which has long produced the so-called flagship coupled GCM used as default to make the runs published by IPCC and EPA. NCAR is a private company associated with the Univ. of CO, Boulder. The DOE climate models are not currently*

*endorsed by the IPCC presumably because the DOE runs/hosts the IPCC Coupled Model Intercomparison Project (CMIP).*

*Based on the above SIST findings and additional Key findings below, Plaintiff justifiably rejected in accordance with federal law [Federal Rules of Evidence] and sound engineering practice and good engineering judgment: **(1)** the uncertified government-unique HITRAN international spectroscopic database used in most climate models and the related DOD AFRL MODTRAN model; **(2)** all government-unique reference spectra for incident sunlight including the proven-corrupt ASTM-E490-00, the old Kurucz spectrum of 1991 aka SAO1995 and the US Navy Research Lab NRLSSI-versions 1 and 2, **(3)** all uncertified government-unique coupled GCM modeling runs; **(4)** the entire NASA SORCE satellite mission dataset; and **(5)** all NASA CERES satellite mission datasets for downwelling and upwelling longwave radiation except for the 8-13 microns water-vapor spectral window restricted to upwelling longwave radiation exiting the top of the atmosphere.*

*This Court is herein provided the grounds to quash all of the above evidence in stopping a Marxist attack on America by the executive branch that is actively attempting to negate our constitutional checks and balances once they take complete control of congress with plans to pack the Supreme Court with liberal justices."*

**Part 5: Resolving issues related to alleged election interference via an alleged textbook top-down Marxist/Leninist/Stalinist insurrection.** See the last paragraph of Section 3 p 13 of the third amended pleadings and the Motion for Order filed by Plaintiff on Jun 5, 2024 and was entered om Jun 6, 2024, including 14 pages of arguments and 47 pages of exhibits (see **EFD 38**).

See Motion for Order as the D.C. District Court to carve out election interference claims from the rest of the suit and then petition SCOTUS to assume original jurisdiction after adding the U.S. Government as a defendant and former President Trump as a plaintiff, subject to his approval.

In investigating why Global Academia has been colluding with progressive left DP operatives in concocting fake evidence on the source of recent global warming, Plaintiff uncovered what he considers to be sufficient evidence that former President Obama either inadvertently or by design set in motion a textbook Marxist/Leninist/Stalinist top-down insurrection by creating a Vanguard Party and army of Marxist revolutionaries that are following the CA playbook for exerting authoritarian control over the U.S.

government via mail-in balloting coupled with illegal ballot harvesting and illegal registered-voter harvesting in the following manner. **(1)** Plaintiff has provided sufficient evidence to prove that that this vanguard party of DP progressive-left-elitist scholars led by the EPA tricked congress into (1a) entering the Montreal Protocol agreement on ozone-depleting substances (ODS) via the Ozone Secretariate and (1b) supporting the Intergovernmental Panel on Climate Change (IPCC) via the Coupled Model Intercomparison Project (CMIP). Specifically, by encouraging the Vanguard party to spew anti-Capitalist anti-white-male Marxist propaganda, DP leaders tricked taxpayers into spending trillions of dollars funding efforts by climate scientists and academic researchers to subvert clear-cut evidence that all global-warming trends that commenced or accelerated in the early 1970s were from a natural solar cycle while concocting evidence that the ozone depletion and warming trends can be blamed on greedy white Republican Party men, especially Trump, and their profit-driven pollution. **(2)** Plaintiff has provided additional sufficient evidence that in openly attempting to overthrow our constitutional republic in top-down fashion and impose a new world order, the DP Vanguard has been spewing fear-mongering propaganda to brainwash college-educated unmarried feminist-leaning single-white-Millennial women and lower numbers of ultra-liberal, woke-white men, to join forces with Millennial minorities to form a coalition that calls themselves the New American Majority (NAM). The NAM comprise a quintessential, textbook army of Marxist revolutionary leaders and soldiers that is reportedly already 60+-million strong and expanding rapidly. They have dedicated their lives to bringing about a textbook Marxist "dictatorship of the proletariat" under the guise of saving the progressive left DP's strained version of Democracy that prefers socialism to capitalism.

Plaintiff continues to ask this Court to split off the claims for election interference citing the constitution rights of republican party voters and candidates and to ask SCOTUS to intercede in ruling on the claims. This request takes into consideration that **(1)** SCOTUS clearly has original jurisdiction; **(2)** SCOTUS already has an associated election interference case on its docket involving former President Trump alleging he interfered in GA; **(3)** Plaintiff is alleging that today's DP is engaged in a textbook top-down Marxist/Leninist/Stalinist insurrection under which it is politizing and weaponizing the SCOCTUS 2010 ruling in Citizens United vs FEC. Plaintiff is confident that SCOTUS will agree that under Federal

Rules of Evidence, a state's inherently vulnerable mail-in vote-tallies cannot decide elections in the presence of ballot harvesting and registration harvesting by armies of paid DP operatives acting in brazen violation of state and federal laws.

**Part 6: List of 20 key findings that provide reference to the associated 20 correlating Exhibits.** reproduced from pages 27-29 of the third-amended pleadings

In the interest of expediency, Plaintiff petitions the court for permission to limit the balance of this motion to restating his prayers for relief. In reiterating his fourth prayer, Plaintiff revised his request for apportionment of putative damages to a request for a bonus covering the astronomical benefits to the USA and Global Society. Plaintiff has come to understands punitive damages are not allowed.

**Exhibit A – Key finding 1**: Proof of Plaintiff's qualifications

**Exhibit B – Key finding 2**: Proof of Plaintiff's formal direct petitions to the EPA and various IGs

**Exhibit C – Key finding 3**: Proof of EPA violation of the 2007 supreme court order and PL-104-113 12(d) by not applying existing ASTM and ISO standards adopted for the solar energy industry thereby creating a double standard

**Exhibit D – Key finding 4**: Proof of internal NASA investigation of a suspected SORCE calibration error

**Exhibit E – Key finding 5**: Proof that NASA SIST 2019-2022 findings deem all IPCC/EPA-endorsed coupled GCM runs invalid

**Exhibit F – Key finding 6**: Proof that ASTM-certified SMARTS2.9.5 can be used to verify SIST findings on the reference spectrum calibration error

**Exhibit G – Key finding 7**: Proof that ASTM-certified SMARTS2.9.5 can be used to validate ASTM-certified reference spectra

**Exhibit H – Key finding 8**: Proof that GS-Max conditions are causing all warming trends

**Exhibit I – Key finding 9** – Proof of that GS-Max-induced incremental **Chappuis band irradiance** is causing all warming trends

**Exhibit J - Key finding 10**: Proof that SMARTS2.9.5 underestimates irradiance in the first and last hours of daylight and all day long in early polar spring and underestimates diffuse radiation from scattering in the polar zone

**Exhibit K – Key finding 11**: Proof that gargantuan plumes of solar-heated seawater are emanating from the Antarctic ozone hole

**Exhibit L – Key finding 12** – Proof that the entire CERES and SORCE satellite datasets used by IPCC/EPA endorsed climate modeling centers are fudged to support the GHGT

**Exhibit M – Key finding 13**: Proof that under GS-Max conditions nitrous oxide (N2O) decomposition does not cause significant stratospheric ozone destruction outside the tropics

**Exhibit N – Key finding 14**: Proof that under GS-Max conditions ODS do not cause environmentally significant stratospheric ozone destruction

**Exhibit O – Key finding 15**: Proof that GS-Max conditions are the source of all warming trends in the Northern Hemisphere

**Exhibit P – Key finding 16**: Proof that the first and second laws of thermodynamics rule out the GHGT

**Exhibit Q – Key finding 17**: Proof that Henry's Law and Ficks Law rule out the GHGT

**Exhibit R – Key finding 18**: Proof that ISO standards for solar water heaters rule out the GHGT

**Exhibit S – Key finding 19**: Proof that GS-Max conditions are causing rising CO2, CH4 and N2O rather than fossil-fuel combustion

**Exhibit T – Key finding 20**: Examples of brazen Marxist propaganda

**Part 7: Proof of the DOJ/EPA's prudent decision not to answer the complaint following failed efforts to convince the court to dismiss the action with prejudice**

Under **ECF No. 28,** Defendant's deadline to file a responsive pleading was Jan 12, 2024, but the deadline was extended to Feb 12, 2024, via Defendant's unopposed motion for a 30-day extension. Service for the motion to extend was affected by the clerk on Jan 3, 2024. See **ECF No 28**. Rather than answering the complaint by the deadline, the Defendant timely filed a motion for dismissal including allegations that

Plaintiff had failed to prove standing and also claiming Absolute Federal Immunity. Service was affected by the clerk on Feb 12, 2024. See **ECF No. 32**. Plaintiff timely filed an opposition to the motion further demonstrating specifically how he had been individually damaged by Defendant's multiple violations of multiple Federal Laws. Plaintiff further noted that under the Administrative Procedure Act, legal actions against executive branch federal employee are allowed if they damage citizens by violating federal laws. Service was affected by the clerk on Feb 12, 2024. See **ECF No. 33**. Defendant timely responded to the opposition. Service was affected by the clerk on Mar 8, 2024. The Defendant's response included a footnote acknowledging that the EPA Administrator had failed to timely respond to Plaintiffs formal petition to deregulate GHGs as required by law, but raised the question as to why it was illegal for Defendant to ignore a statutory deadline. See **ECF No. 35**. Plaintiff timely filed a supplemental memorandum objecting to the response while admonishing the defense to settle the action on the basis they cannot possibly win and needed to consider the welfare of the citizens and commercial enterprises of the USA. Service was affected by the clerk on Mar 18, 2024. See **ECF No. 36**. Plaintiff then allowed the Defendant in excess of 60 days to either further defend the motion of dismiss or answer the complaint or for the Court to make a ruling. When Defendant failed to do either and this Court made no ruling, Plaintiff filed an affidavit on Jun 13, 2024, **(ECF No. 39)** asking the clerk to initiate what he understands from the following link to be a two-step process under Federal Rules of Civil Procedure 55(a) and 55(b).. These cover the entry of judgment against a party who fails to defend. Service of the affidavit was affected by the clerk on Jun 17, 2024. See **ECF No. 39**. Link: Default Judgment Procedure.pdf (uscourts.gov)

Defendant has prudently and appropriately failed to defend this action as required by the Federal Rules of Civil Procedure. Thus, in preparing this motion for default judgment, Plaintiff is following rule 55(b) of the Federal Rules of Civil Procedure and is submitted this document to the clerk via registered mail on June 26, 2024 as what he assumes will be **ECF No 40**.

For the reasons described above, entry of default judgment against Defendant is warranted Pursuant to the above-cited Federal Rules of Civil Procedure and the Administrative Procedure Act 5 U.S. Code Section 7604 part 702 titled "Right of Review" and part 705 "Scope of Review."

**Part 8: Plaintiff's prayers for relief taken near verbatim from the third-amended pleadings pp 24-27**

**1st Prayor for relief** – That this court declare that on the basis of the NASA Solar Irradiance Science Team (SIST2) May 2022 presentation and Plaintiff's findings as set forth in **Section 4**, the Defendant(s) has/have violated the constitution as well as the federal and state laws and guidelines listed in **Section 6** in issuing/endorsing the White House U.S. Global Change Research Program (USGCRP) November 14, 2023 report on Climate knowing full well that the findings on the cause of global warming and stratospheric ozone depletion trends that commenced or accelerated in the early 1970s were false and had been completely debunked.

**2nd Prayor for relief** – That this court declare that on the basis of the NASA SIST2's May 2022 presentation and Plaintiff's findings the following lines of evidence as set forth in **Section 3** of the pleadings are quashed and deemed invalid under codified Federal Rules of Evidence and cannot be used in justifying the adoption of Clean Air Act regulations: **(1)** the uncertified government-unique HITRAN international spectroscopic database used in most climate models; **(2)** all government-unique reference spectra for incident sunlight including the proven-corrupt ASTM-E490-00, the old Kurucz spectrum of 1991 (a.k.a. SAO-1995 and E490-00) and the US Navy Research Lab NRLSSI-versions 1 and 2, **(3)** all uncertified government-unique coupled GCM modeling runs dating back to the 1970s; **(4)** the entire NASA-SORCE-satellite-mission dataset; and **(5)** all NASA-CERES-satellite-mission datasets for downwelling and upwelling longwave radiation except for the 8-13 microns water-vapor spectral window restricted to upwelling longwave radiation exiting the top of the atmosphere.

**3rd Prayor for relief** – That this Court declare that because Defendant put Plaintiff in the position of having to use his extensive experience as a top-tier private-sector environmental engineer with 30-years' experience as a court-appointed neutral fact finder to establish all the findings set forth in **Section 4** of these pleadings and the exhibits at enormous time and effort, that Plaintiff is entitled to compensatory relief in an amount to be determined by the Court.

**4th Prayor for relief** – That this Court declare that because Defendant put Plaintiff in the position of having to issue press releases, make an attempt to publish his findings in scientific journals, file whistle-blowing complaints, submit formal petitions; and prepare extensive pleading and exhibits that ultimately proved successful in convincing this Court that his findings were valid, that Plaintiff is entitled to relief

including a reward in an amount to be determined by the Court taking into consideration the astronomical amount he is saving we the people of the USA and our business enterprises.

5th **Prayor for relief** – That this Court declare that based on the circumstances and the nature of the allegations and extent of factual evidence provided in claiming relief, Plaintiff was entitled to add the executive director of the White House USGCRP to the complaint so he can be paid from the massive FY 2024 budget for climate change research and corrective action in an amount to be determined by the Court.

6th **Prayor for relief** – That this Court declare that based on the circumstances and the nature of the allegations and extent of factual evidence provided, in claiming relief, Plaintiff is entitled to be jointly retained as an outside consultant to the EPA and USGCRP for a period to be set by the Court in an annual lump sum amount to be set by the Court and that the Court will retain jurisdiction during this interval to settle any disputes.

7th **Prayor for relief** – That this court issue an order that on the basis of the NASA SIST2's May 2022 presentation and Plaintiff's findings as set forth in **Section 4**, Defendant EPA is ordered to withdraw the December 2009 notice of endangerment and commence the process of revising or withdrawing GHGs and ODS as regulated hazardous air pollutants under Clean Air Act regulations and will cease work implementing the green new deal as set forth in the so-called Biden Administration's Inflation Reduction Act.

8th **Prayor for relief** – That this court issue an order that on the basis of the NASA SIST2's May 2021 report and May 2022 presentation and Plaintiff's findings as set forth in **Section 4**, that Defendant(s) is/are ordered to cease and desist from disseminating any claims that GHGs and ODS are causing global warming or stratospheric ozone depletion or in any way advance/promote Marxist ideology or violate their oath of office/pledge of allegiance.

**Part 9: Closing**

We the people of the USA are counting on the federal courts to save our constitutional republic under the Constitutional separation of power clause. It is Plaintiff's privilege to be in a position to assist.

Civ. No. 1:23-cv-01346-DLF

Dated: June 26, 2024

Respectfully submitted,

Pro-se Plaintiff, Brian T. Kelleher
4618 Thorntree Ct
Stockton, CA 95210
bkellehr@ix.netcom.com 408-712-1214

*[signature]*

CERTIFICATE OF SERVICE – I, Brian T. Kelleher, certify that on this 26th day of June 2024, I mailed five true and correct signed copies of this Motion for default judgment against Defendant EPA Administrator to the Clerk of the Washington D.C. Federal District Court by USPS certified mail with electronic proof of service requested with the understanding that the Clerk will scan the documents and send electronic copies to attorneys representing the defendants.

*[signature]*   June 24, 2024
**Brian T Kelleher**